At the hearing before the Deputy Commissioner, the parties submitted a Pre-Trial Agreement dated 7 December 1992; and this document with its stipulations is incorporated by reference as though fully restated herein.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 50 years old, with a date of birth of 19 July 1942. For her education plaintiff had completed the 10th grade and had no other vocational training. Plaintiff worked for defendant (under different owners) from August 1980 to July 1990. Plaintiff performed several production-type jobs, with some duties requiring that she lift 10 to 50 pounds.
2. During a storm on 22 June 1990, the defendant's plant lost electrical power. In the dark, plaintiff tripped and fell to the floor, landing on her back. This incident was an interruption of her regular work routine by unusual circumstances likely to result in unexpected consequences.
3. The incident occurred on a Friday. Plaintiff began treatment on the next Monday with Dr. Fernandez, a physician recommended by defendant. Plaintiff continued to work at light duty, and Dr. Fernandez provided conservative treatment for her back. On the week of 19 July 1990, plaintiff was released to return to work at full duties; however, she was laid off by defendant. Plaintiff collected unemployment benefits, and she held a job for about two weeks. On 29 February 1991 plaintiff returned to work with another employer (Hanover Clocks) as a part-time employee. On 22 April 1992 plaintiff became a full-time employee with Hanover Clocks. Plaintiff continued to work at Hanover Clocks through the date of the hearing.
4. Prior to the incident in June 1990, plaintiff had injured her back at work. Sometime around January 1982, plaintiff fell at work and hurt her back and right elbow. Seven to eight months later, on 19 August 1982, plaintiff was examined by Dr. Landon B. Anderson, an orthopedic surgeon. Dr. Anderson provided conservative treatment for four months. During this time, plaintiff claimed she made no improvement and complained of significant back pain. Because of the length of time that the pain had persisted following the fall, and because of her failure to respond to conservative treatment, it was Dr. Anderson's opinion, and the undersigned finds, that plaintiff suffered from a chronic pain condition. Because of her responses during physical examinations, it was Dr. Anderson's opinion, and the undersigned finds, that plaintiff retained a two percent permanent partial impairment to the use of her back as a result of the fall in 1982.
5. There are no medical notes in the record between November 1982 and June 1990, which would corroborate plaintiff's statements that she was pain-free at the time of the fall in June of 1990. However, the undersigned does not accept as credible plaintiff's testimony that her pain resolved about one year after the 1982 accident and that she had no further problems. Throughout his treatment, Dr. Anderson was pessimistic that plaintiff's pain could ever be resolved; and at his last examination in 1982 (29 November 1982) plaintiff reported to Dr. Anderson that she was continuing to experience pain and that a small disability rating would not compensate her for the pain she was experiencing. Considering her course of treatment, it would certainly be miraculous if plaintiff were pain-free within one year of the November 1982 examination.
6. For about one month after the June 1990 fall, plaintiff received treatment from Dr. Fernandez. Under his directions, medication was provided and x-rays and an MRI were performed. At the time of the MRI there was some bulging of the spinal disk at levels L4-5 and L5-S1. Plaintiff received no treatment from July 1990 to February 1991.
7. On 27 February 1991 plaintiff was examined by Dr. James Markworth, an orthopedic surgeon (and a partner with Dr. Anderson). At this time, plaintiff reported some limited range of motion, but the results of a straight leg raising tests were negative bilaterally. Dr. Markworth began a course of conservative treatment. Plaintiff complained that her back problems did not improve. In August 1990 plaintiff reported burning low back pain on a daily basis, numbness in her left leg, and that her left leg would become "heavy" and she would have to drag it. Dr. Markworth ordered a myelogram/CT scan to find if there was a lateral disk problem which had been missed by the MRI. At the time of the myelogram/CT scan, there was minimal bulging at spinal disks L5-S1, which was without significant effect upon the thecal sac or the S1 nerve root. At all other disk levels, the results were normal.
8. On 7 February 1992 (about one year after beginning treatment) Dr. Markworth diagnosed "segmental instability" at spinal disks L4-5, and Dr. Markworth recommended surgery to repair this condition. The following is his testimony regarding causation:
 Mr. Clare: Essentially I guess what we're saying here or what you're saying is based upon the history she gave you if she was asymptomatic before June 22, 1990 and then all of a sudden began to have problems it doesn't matter whether it was a new condition or not, her symptoms began at that time?
Dr. Markworth: Correct.
 Mr. Clare: And therefore her current problems can be traced to that time?
Dr. Markworth: Yes.
 Mr. Clare: But the condition that would be corrected by surgery, which would be the instability, you're not in a position to say that that was directly related to that incident?
Dr. Markworth: Right.
Based on Dr. Markworth's testimony, the surgery to relieve the segmental instability was not made necessary as a result of the incident of 22 June 1990.
9. From 22 June 1990 through the date of the hearing, plaintiff has continuously worked or collected unemployment benefits. Therefore, the undersigned finds that the incident of 22 June 1990 did not cause plaintiff to be unable to work at her regular job with defendant or at any other employment for which she was qualified on 22 June 1990.
10. There is insufficient evidence of record on which the undersigned can infer that the incident of 22 June 1990 caused any permanent partial impairment to plaintiff's back.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On 22 June 1990 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant employer. N.C.G.S. 97-2 (6).
2. As a result of the accident, plaintiff is not entitled to any temporary total disability compensation. N.C.G.S. 97-29.
3. As a result of the injury by accident, plaintiff is not entitled to any permanent partial disability compensation. N.C.G.S. 97-31.
4. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the injury by accident. Said medical treatment shall not include any diagnostic tests or surgery recommended by Dr. Markworth or Dr. Whitehurst to repair the segmental instability of plaintiff's back. N.C.G.S.97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for temporary total disability compensation and permanent partial disability compensatitotalon pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby DENIED.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of the accident of 22 June 1990. Said medical treatment shall not include any diagnostic tests or surgery recommended by Dr. Markworth or Dr. Whitehurst for the purpose of repairing plaintiff's segmental instability of her back. Payment shall be made after bills have been submitted through the defendant to the Industrial Commission and approved by the Commission.
3. Defendants shall pay all costs including an expert witness fee in the amount of $275.00 to Dr. Lee Whitehurst and $275.00 to Dr. James Markworth.
 S/ ______________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ______________________________ COY M. VANCE COMMISSIONER
S/ ______________________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 1/26/95